CRAMPTON v. MASSIE et al.

In re CAMPBELL.

(Circuit Court of Appeals, Fifth Circuit. November 1, 1916.)

No. 2843.

1. MORTGAGES ⬤�ims298(4)—PAYMENT—EFFECT.
    Generally the payment of a debt secured by mortgage extinguishes the mortgage.
    [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 850–854, 864; Dec. Dig. ⬤�ims298(4); Payment, Cent. Dig. § 12.]

2. MORTGAGES ⬤�ims317—VALIDITY—EXTINGUISHMENT.
    In view of Code Ala. 1907, § 4899, declaring that the payment of a mortgage debt, whether the mortgage is of real or personal property, divests the title passing by the mortgage, a mortgagor, after the mortgage has been paid, cannot, by erasing the satisfaction and returning it to the mortgagee to hold for the benefit of another, who had made another loan to the mortgagor, revive the mortgage.
    [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 955; Dec. Dig. ⬤�ims317.]

3. BANKRUPTCY ⬤�ims267—PETITION—RIGHT TO INTERVENE.
    Land of a bankrupt was sold by the trustee, and thereafter a portion of the land, so sold was again sold under decree of the bankruptcy court

⬤�ims For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to satisfy a mortgage. The original purchaser, contending that the mortgage was invalid, filed a petition to set aside the second mortgage, or in the alternative for an order directing payment of the proceeds of the sale to him. *Held* that, as the prayer of the petition indicated the purchaser's willingness to allow the sale to stand and to look to the proceeds, and as a denial of his right to intervene might result in dissipation of the fund without protection of his rights, the purchaser is entitled to intervene without leave.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 694, 695, 697–709; Dec. Dig. ☞267.]

Petition to Superintend and Revise from the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

In the matter of the bankruptcy of M. B. Campbell. Petition by F. J. Crampton for vacation of sale of property of the bankrupt, or, in the alternative, for payment to him of the proceeds of the sale, opposed by Bessie K. Massie, guardian of the estate of Joel White Massie, and George Stuart, as trustee. The petition was dismissed, and petitioner petitions to superintend and revise. Decree reversed.

See, also, 227 Fed. 49, 50, 840.

Prior to and at the time of the bankruptcy of M. B. Campbell, he owned all of block 2 according to the recorded plat of East Point, in Montgomery county, Ala., except lot 16 of that block. On December 5, 1913, he executed and delivered to T. L. Epps a mortgage on lot 20 of that block to secure a debt of $1,800, which was to mature on March 5, 1914. Afterwards he made other mortgages conveying all the lots in block 2 owned by him, including lot 20, previously mortgaged to Epps. On May 25, 1915, a decree was made in the bankruptcy proceeding directing the trustee to sell all of said block 2, except lot 16, but including lot 20, subject to the incumbrances thereon, and on June 26, 1916, at the sale made pursuant to that decree, F. J. Crampton became the purchaser of all the lots decreed to be sold. The sale was duly confirmed, a deed was made by the trustee to the purchaser, who went into possession of the property purchased, and was in possession when he filed his petition in the bankruptcy proceeding. In October, 1914, prior to his bankruptcy, M. B. Campbell, for the purpose of getting said lot 20 released from the mortgage to Epps, agreed with the latter to give him a note for $1,950, payable at a future date and secured by mortgages on other property, upon the receipt of which by Epps the latter marked the mortgage to him, on lot 20, "Satisfied in full and canceled," and surrendered that mortgage and the note it secured to Campbell. Thereafter, but also prior to the bankruptcy, Campbell borrowed from Bessie K. Massie, as guardian, $750, and to secure that amount sent back to Epps the $1,800 mortgage, from which Campbell had erased the satisfaction and cancellation placed thereon by Epps, and had Epps to sign a transfer and assignment of that mortgage, which had been written upon it by the agent of Bessie K. Massie. Epps received no part of the $750 so obtained by Campbell. On July 24, 1915, after the date of the sale at which Crampton bought, the court in the bankruptcy proceeding made another decree directing the trustee to sell said lot 20, and on August 31, 1915, the trustee sold the same. At that sale J. E. Duskin became the purchaser thereof at the price of $900, which amount the trustee received and was holding at the time Crampton filed his petition. The decree last mentioned was made after the court, on a claim propounded by Bessie K. Massie, guardian, in the bankruptcy proceeding, had decreed that she, as guardian, was the owner of the mortgage to Epps and held the same as security for $750, interest thereon, and attorney's fees, making in all $885. Crampton was not a party to and had no notice of the proceedings leading up to the decree under which Duskin purchased.

Crampton filed a petition in the bankruptcy proceedings, which, after averring the facts above set out, prayed that notice of the petition be given

to all parties in interest, including said Bessie K. Massie, as guardian, that the sale of said lot 20 to said Duskin be set aside, and the amount paid be restored to him, or that, if said sale be confirmed, it be decreed that the proceeds of said sale belong to the petitioner, and that the trustee be ordered to pay the same to petitioner. In response to that petition Bessie K. Massie, as guardian, appeared and moved that the petition be dismissed on the following grounds: "(1) This court has no jurisdiction of said petition. (2) Said Crampton is a stranger to the proceedings to which his petition relates, and has no right to intervene therein. (3) Said Crampton is a stranger to the proceedings to which his petition relates, and had no right to intervene without first obtaining leave of the court, which he failed to obtain. (4) Said petition filed by said Crampton is neither a proceeding at law nor in equity between parties over whom the court would have jurisdiction, and is not authorized by the bankruptcy law." Her motion concluded as follows: "Respondent moves the court to order said money paid over to her." On the hearing of this motion the court decreed that "the petition filed by F. J. Crampton, without permission of the court, be and is hereby dismissed out of this court," and further that the fund realized from the sale of lot 20 be paid by the trustee to Bessie K. Massie, or so much thereof as was required to satisfy the decree in her favor. It is this decree which Crampton seeks to have reviewed on his petition to superintend and revise.

J. Lee Holloway, of Montgomery, Ala., for petitioner.
Fred S. Ball, of Montgomery, Ala., for respondent Stuart.
John M. Chilton, of Montgomery, Ala., for respondent Massie.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

WALKER, Circuit Judge (after stating the facts as above). [1, 2] In the absence of a statute affecting the question, it is the generally, if not universally, accepted rule that, when a debt secured by a mortgage has been paid, the mortgage becomes functus officio and dead, and it cannot be made to stand as security for a new or different debt between the original parties, or reissued to a different creditor. Bogert v. Bliss, 148 N. Y. 194, 42 N. E. 582, 51 Am. St. Rep. 684; Lamphier v. Desmond, 187 Ill. 370, 58 N. E. 343; Bowman v. Manter, 33 N. H. 530, 66 Am. Dec. 743; 27 Cyc. 1434; 1 Jones on Mortgages (6th Ed.) § 944. An Alabama statute (Code Ala. 1907, § 4899) provides that:

"The payment of a mortgage debt, whether the mortgage is of real or personal property, divests the title passing by the mortgage."

The mortgage to Epps had no legal existence after the payment of the debt it secured and the cancellation and delivery of it by Epps to the mortgagor. Cade v. Floyd, 120 Ala. 484, 24 South. 944; Abbett v. Page, 92 Ala. 571, 9 South. 332. What Campbell did and procured Epps to do amounted to an ineffectual attempt to make a real estate mortgage to a new creditor without a compliance with the requirement of the statute of frauds. The mortgage to Epps was not an existing incumbrance on the land when Crampton made his purchase under the decree of the court. The title which he acquired by his purchase and the conveyance by the trustee pursuant to the decree of the court was not subject to the Epps mortgage as an existing incumbrance.

**[3]** The record does not disclose any legal obstacle standing in the way of granting the relief which Crampton's petition prayed. The prayer of the petition indicated the petitioner's willingness to let the sale at which Duskin bought stand, and to look to the amount of the purchase price paid into court as a substitute for the lot for which it was paid. The case is that of a fund in court undergoing administration, to which a third party asserts a right, based upon proceedings in the same cause, which would be lost if he is not allowed to intervene before the fund is dissipated. In such a case he has a right to intervene. Credits Commutation Co. v. United States, 91 Fed. 570, 34 C. C. A. 12; Id., 177 U. S. 311, 20 Sup. Ct. 636, 44 L. Ed. 782; Ex parte Printup, 87 Ala. 148, 6 South. 418; Ex parte Breedlove, 118 Ala. 172, 24 South. 363. We are not of opinion that the intervention petition was subject to be dismissed on either of the grounds stated in the motion made to that end. On the facts disclosed by the record it was error to dismiss the petition and to decree the payment of the fund in question to the holder of the extinct mortgage to Epps.

The decree complained of is reversed; the costs to be taxed against Bessie K. Massie.